IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Craig B. Shaffer**

Civil Action No. 04-cv-02450-CBS-MJW

RENE ARTURO TAVERA,

      Plaintiff,

v.

JOHN H. POTTER, Postmaster, United States Postal Service,

      Defendant.

_____

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
_____

**Magistrate Judge Craig B. Shaffer**

      This matter comes before the court on Defendant's Motion for Summary

Judgment [#31], filed January 18, 2006.  Pursuant to an Order [#6] dated April 6, 2005,

this matter was referred to Magistrate Judge Shaffer to handle all dispositive matters

including trial and entry of a final judgment in accordance with **28 U.S.C.** § **636 (c), FED.**

**R. CIV. P. 73,** and **D.C.COLO.LCivR 72.2.**  This court issued an Order [#10] on April 8,

2005, confirming the same.  The court has reviewed the Motion, Plaintiff's Response

[#36], filed February 17, 2006, Defendant's Reply [#43], filed March 9, 2006, the

exhibits, the entire case file, and the applicable law and is sufficiently advised in the

premises.

**I.    Factual Background.**

      Plaintiff is currently an employee of the United States Postal Service (USPS),

serving as a tractor-trailer driver at the USPS General Mail Facility (GMF) in Denver, Colorado. **(Compl., ¶ ¶ 4 & 19)** In February 1998, Plaintiff was assigned primarily to serve as a 204-B Supervisor in Transportation (204-B)[1], serving as a Supervisor of Transportation Operations (STO). He served in that capacity until June 1999, when he returned to his craft position. **(Compl, ¶ 20, 21 & 42).**

On October 11, 1999, Plaintiff filed his first of three EEO Complaints, Case No. 1E-801-009999, alleging that he was discriminated against because of his race (Hispanic), sex (male), and national origin (Mexican American) when (1) he was not selected for two EAS-16 STO[2] positions on June 10, 1999, and July 17, 1999; and (2) he was relieved of his 204-B duties and returned to his craft duties. **(Mtn. Sum. Jud., Ex. A).** Specifically, in April, 1999, before losing his 204-B position, Plaintiff applied for a vacant EAS-16 STO position. A female, Elise Cottrell ("Cottrell"), was selected for the first EAS-16 STO position opening on June 5, 1999. **(Mtn. Sum. Jud., Ex. B).** A male, Jim Dunlap ("Dunlap"), was selected for the second EAS-16 STO position opening on July 17, 1999. **(Mtn. Sum. Jud., Ex. C).** The then-serving Manager of Transportation and Networks, Tim Pickering ("Pickering"), was the selecting official for Cottrell and Dunlap's positions. **(Mtn. Sum. Jud., Ex. B & C).**

On November 9, 2000, Plaintiff filed his second EEO complaint, Case No. 1E-801-0077-00, claiming that he was discriminated against because of his race

---

[1]  A 204-B position is an acting supervisor assignment.

[2]  "EAS-16" denotes the specific job level of the STO position.

(Hispanic), sex (male), national origin (Mexican American), and in retaliation for filing a prior EEO complaint.  Plaintiff claimed he was not selected for a STO position, which was awarded to Don Krynovich ("Krynovich") on January 29, 2000, in retaliation for his first EEO Complaint.  Plaintiff further claimed that he was not selected because he lacked a continuous 204-B assignment.  **(Mtn. Sum. Jud., Ex. N).**

According to the applicable collective bargaining agreement, "[t]he duty assignment of a full-time motor vehicle craft employee detailed into a non-bargaining unit position . . . in excess of four months shall be declared vacant and shall be posted for bid." **(Mtn. Sum. Jud., Ex. G).**   Therefore, an employee is allowed to serve in a 204-B assignment for up to four months, or 120 days, without losing his bid position. **(Mtn. Sum. Jud., Ex. H, p. 14).**

Don Krynovich had served primarily as a 204-B since July 4, 1998, and remained in that assignment until he was selected for a permanent STO position on January 29, 2000.  **(Mtn. Sum. Jud., Ex. E, pp. 12-14; Ex. F, ex. 4).**  Krynovich approached Cecilia   ("Lopez"), who was serving as the Manager, Distribution Operations (MDO) and of Hispanic descent, and requested to continue working in a 204-B capacity, even though he had already gone beyond his 120 days prior to Lopez arriving in the unit.  **(Mtn. Sum. Jud., Ex. I, p. 31).**  Unlike Krynovich, Plaintiff was reassigned from his 204-B position to his bid position after serving 120 days in the 204-B position.  **(Mtn. Sum. Jud., Ex. J, pp. 35-36).**  Defendant claims that if Plaintiff would have remained as a 204-B supervisor beyond 120 days, he would have lost his

bid position.  **(Mtn. Sum. Jud., Ex. I, p. 31; Ex. K, p. 33).**  Unlike Krynovich, Plaintiff never requested to remain in his 204-B assignment after 120 days had passed.  **(Mtn. Sum. Jud., Ex. L, pp. 39-40, 43-44; Ex. M, p. 31).**  Plaintiff was never asked to act as a 204-B supervisor again, which he claims harmed his ability to obtain other promotions, including STO positions.

Krynovich had served as a 204-B Supervisor under Lopez from the time of her arrival until he was selected for an EAS-16 STO position. **(Mtn. Sum. Jud., Ex. P).** During that time, Lopez claims that she was able to observe Krynovich's supervisory skills, paperwork, and communication skills, which she found to be favorable.  **(Mtn. Sum. Jud., Ex. Q, p. 93).**  Lopez was the selecting official for this position, and interviewed both Krynovich and Plaintiff, among others, for the EAS-16 STO position. Lopez claims that she did not select Plaintiff because he did not interview well, did not seem prepared for his interview, and could not answer the questions as well as other candidates.  Plaintiff disputes this, arguing that Lopez told him it was unnecessary to change into interview clothes prior to his interview, suggesting, in his opinion, that the selection was predetermined.  Further, Plaintiff claims that Lopez did not ask him any questions pertaining to driving; rather she asked him questions about operating plans and goals for processing of distribution, which he claims do not relate to transportation. **(Resp., Ex. 2, Tavera  Dep.).**  Lopez believed that Krynovich provided better technical answers than Plaintiff and demonstrated a great desire to be a supervisor.  **(Mtn. Sum. Jud., Ex. R, p. 25-26).**

On November 2, 2002, Plaintiff filed his third EEO Complaint, Case No. 1E-801-0175-02, wherein Plaintiff alleged that he was discriminated against because of his race (Hispanic), sex (male), national origin (Mexican-American), age (over 40)–which is not mentioned in his Complaint– , and in retaliation when he was not provided an opportunity to apply for a STO position.   **(Mtn. Sum. Jud., Ex.  S).**

Plaintiff previously applied for other positions while employed by the USPS, including the three at issue in this case.   **(Mtn. Sum. Jud., Ex. T, pp. 7, 10, 11, & 45).** Plaintiff was aware that position openings are often posted on the bulletin board in the transportation department, where employees can see the vacancies.   **(*Id.,* p. 7).** Plaintiff was also aware that vacancy announcements were maintained by Human Resources in the building adjacent to the transportation section.   **(Mtn. Sum. Jud., Ex. U, p. 13-14).**   Six individuals applied for the STO position vacancy announced on April 24, 2002.   **(Mtn. Sum. Jud., Ex. V).**   Michael Silva, who ultimately was selected for the STO position on June 29, 2002, learned of the position vacancy through a bulletin board posting.   **(Mtn. Sum. Jud., Ex. Z).**

In his first claim for relief, Plaintiff alleges that the Defendant discriminated against him because of his national origin (Hispanic) in violation of violation of Title VII of the Civil Rights Act, **42 U.S.C. § § 2000e-2000e17** (Title VII) as follows: when he was removed from his 204-B position but a non-Hispanic was not; when other non-Hispanics were promoted to STO positions; and when Defendant allegedly failed to post other STO positions that ultimately were awarded to non-Hispanics.  **(Comp., 10-**

**11).**  The second claim for relief claims that Defendant discriminated against Plaintiff because of his gender (male) by selecting a female rather than Plaintiff for a STO supervisory position.  **(Comp., p. 12).**  The third claim for relief alleges that Defendant retaliated against Plaintiff for filing three EEO charges of discrimination as follows: by refusing to promote him; by prohibiting him from applying for STO positions; by substantially changing his work conditions; by negatively impacting various terms and conditions of employment; by issuing unwarranted discipline; by taking measures to set Plaintiff up for potential safety infractions; and by subjecting him to a hostile work environment.  **(Comp, p. 13).**

II.   **Standard of Review.**

      A.   **Summary Judgment Standard.**

      A moving party is entitled to summary judgment when the evidence indicates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  **FED. R. CIV. P. 56(c)**.  A requirement of a genuine issue of fact means that the evidence is such that a reasonable jury could return a verdict for the non-moving party.  The moving party has the burden of showing the absence of a genuine issue of material fact.  This burden may be met by showing that there is an absence of evidence to support the non-moving party's case.  ***Celotex Corp. v. Catrett,*** 477 U.S. 317, 325 (1986).  "[A] party opposing a properly supported motion for summary judgment 'may not rest on mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  ***Anderson,***

477 U.S. 242, 256 (1986).

In applying the summary judgment standard, the court construes the factual record and any reasonable inferences therefrom in a light most favorable to the party opposing summary judgment. ***Blue Circle Cement, Inc. v. Bourad of County Comm'rs.,*** 27 F.3d 149, 1503 (10th Cir. 1991). However, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. ***FDIC v. Hulsey,*** 22 F.3d 1472, 1481 (10th Cir. 1994). To constitute a genuine factual dispute, there must be more than a scintilla of evidence; summary judgment may be granted if the evidence is merely colorable or is not significantly probative. ***Vitkus v. Beatrice, Co.,*** 11 F.3d 1535, 1539 (10th Cir. 1993). "[T]he relevant inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" ***Bingaman v. Kansas City Power & Light Co.,*** 1 F.3d 976, 980 (10th Cir. 1993) (quoting ***Anderson,*** 477 U.S. at 251-52).

**B.    *McDonnell Douglas* Burden-Shifting Analysis for Title VII Claims.**

In order to prevail on his claims under Title VII, Plaintiff has the ultimate burden of proving either directly or indirectly, that the conduct in question was motivated by bias. ***Elmore v. Capstan, Inc.,*** 58 F.3d 525, 529 (10th Cir. 1995). Plaintiff has provided no direct evidence of discrimination. Instead, Plaintiff seeks to prove his case through circumstantial evidence. Therefore, the three-step, burden-shifting format set forth in ***McDonnell Douglas v. Green,*** 411 U.S. 792 (1973), is applicable to Plaintiff's

Title VII claims.

When there is no direct evidence of discrimination, Plaintiff must set out his *prima facie* case– which is a relatively light burden– from which discriminatory intent can be inferred.  *Id.*  Defendant then has the burden of articulating a legitimate, nondiscriminatory reason for the adverse action to rebut Plaintiff's inference of discrimination.  This is a burden of production only, not a burden of persuading the court that the Defendant was actually motivated by the proffered reason.  ***Texas Dep't of Community Affairs v. Burdine,*** 450 U.S. 248, 255 (1981); ***EEOC v. Flasher Co., Inc.,*** 986 F.2d 1312, 1316 (10th Cir. 1992).  Third and finally, the Plaintiff in the rebuttal phase, must prove that the Defendant's articulated reason was prextual.  The presumption of discrimination created by Plaintiff's *prima facie* case has disappeared and it becomes Plaintiff's burden to prove intentional discrimination either directly by demonstrating that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence.  ***Burdine,*** 450 U.S. at 256 (quoting ***McDonnell Douglas,*** 411 U.S. at 804-05).

## III.   **Anaylsis.**

### A.   **National Origin Discrimination.**

Plaintiff's first claim alleges national origin discrimination in violation of Title VII, **42 U.S.C. § § 2000e-2000e17.**   Title VII prohibits discrimination on the basis of national origin.  According to the EEOC 1980 Guidelines on National Origin, "national

origin discrimination" is defined as:

> [I]ncluding, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group....

**29 C.F.R. § 1606.1. *See also Reiter v. Center Consol. Sch. Dist. No. 26-JT,*** 618 F. Supp. 1458 (D. Colo. 1985) (Title VII prohibits discriminatory employment practices based on an individual's association with persons of a particular national origin).

### I.    Denial of 204-B Position.

Plaintiff claims he was stripped of his 204-B position because of his national origin.  To establish a *prima facie* case, Plaintiff must show by legally sufficient evidence that (1)  he is a member of a protected class (Hispanic); (2)  that he asked to remain in his 204-B position, and was qualified for it; (3) that despite his qualifications he was stripped of the 204-B position after 120 days; (4)  and that Krynovich, who was allowed to stay in 204-B positions beyond 120 days, was not a member of Plaintiff's protected class. ***See Branson v. Price River Coal Co.,*** 853 F.2d 768, 770 (10th Cir.1988).  Plaintiff need not prove that his situation was identical to that of Krynovich, but he must show that his situation was comparable.  ***EEOC v. Flasher Co., Inc.,*** 986 F.2d 1312, 1316 (10th Cir. 1992).

Plaintiff claims that Defendant stripped him of his 204-B position despite his communicated desire to continue to act as a 204-B supervisor, and that Krynovich, a Caucasian, was allowed to remain beyond 120 as a 204-B supervisor.  Defendant does not dispute that Plaintiff was qualified to serve as a 204-B supervisor.  Based on the

9

foregoing, Plaintiff has sufficiently established a prima facie case of discrimination.

Pursuant to the ***McDonnell Douglas*** burden-shifting analysis, Defendant must provided a legitimate, non-discriminatory reason for allowing Krynovich, and not Plaintiff, to serve continuously as a 204-B supervisor from July 4, 1998, until he was selected for a permanent STO position on January 29, 2000. **(Mtn. Sum. Jud., Ex. E, Krynovich Dep., pp. 12-14).** After he serving as a 204-B for more than120 days, Krynovich approached Lopez, who was acting Manager, Distribution Operations, and asked to continue in a 204-B capacity. **(Id., Ex. I, Lopez Dep., p. 31).** Lopez granted his request, and Krynovich lost his bid position.

Unlike Krynovich, Plaintiff never approached Lopez to remain in a 204-B assignment after his 120 days had passed. **(Id., Ex. L, Travera Dep., p. 39-40; 43-44; Ex. M, Lopez Dep., p. 31).** Plaintiff indicated to Lopez before the 120 days had passed that he wanted to remain in a 204-B assignment. Despite Plaintiff's request, Lopez reassigned Plaintiff from his 204-B position to his bid position while he was on vacation. **(Id., Ex. I, Lopez Dep., p. 31).** Providing a non-discriminatory reason for the decision, Defendant points to Lopez's claim that she reassigned Plaintiff so that he would not lose his bid position by serving as a 204-B beyond 120 days. **(Id., Ex. I, Lopez Dep., p. 31; Ex. K, Travera Dep., p. 33).**

Because Defendant has put forth a legitimate, non-discriminatory reason for its action the burden shifts to Plaintiff to present evidence that Defendant's reasons are pretextual (*i.e.,* unworthy of belief) or by otherwise introducing evidence of a discriminatory motive. ***Danville v. Reg'l Lab Corp.,*** 292 F.3d 1246, 1250 (10th

10

Cir.2002). "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quotation omitted). In making this determination, the court considers the evidence as a whole. *Id.* Ordinarily this test can be "satisfied by proof that the employer treated similarly situated employees more favorably." *Hysten,* 296 F.3d 1171, 1181 (10th Cir. 2002).

Plaintiff attempts to show pretext by arguing that Defendant's treatment of Krynovich was inconsistent with Lopez's proffered reason for removing Plaintiff from his 204-B position. Krynovich was allowed to go over 120 days in his 204-B position. Although Krynovich lost his bid position by remaining a 204-B, no one told him to step down from his 204-B position as they did with Plaintiff. **(Resp., Ex.5, Krynovich Dep.).** Further, prior to the expiration of the 120 day period, Plaintiff informed Pickering and Lopez that he preferred to remain as a 204-B supervisor even if it meant losing his bid position. Plaintiff claims that Lopez responded "well I don't know right now. I will have to look." **(Resp., Ex. 4, 29: 13-25, 31: 1-25, & 32: 1-26).** However, another STO informed Plaintiff that Pickering and Lopez did not want to keep Plaintiff as a 204-B. **(Id., at 30:11-25, 31:1-3).** Despite his requests, management stripped Plaintiff of his 204-B position via voice mail. Plaintiff claims that he did not approach Lopez *after* she stepped him down– as Krynovich did– because he believed that she already knew from their prior conversations that he wanted to stay on as a 204-B. **(Id., at 39: 18-25,**

**40:1-22).**

Further, Plaintiff claims that at the time Defendant removed him from his 204-B position, Lopez told a driver in transportation that she did not want any more drivers to become STOs. **(Resp., Ex. 6, Morin Aff.).** Plaintiff was a driver. According to Plaintiff, drivers who remain as 204-B supervisors have a better chance of attaining a STO position because a 204-B position provides various training and supervisory opportunities apart from driving.

Plaintiff's evidence sufficiently suggests that Lopez's proffered reasons for removing Plaintiff from his 204-B position– that he did not ask to stay on and that he would lose his bid position– are unworthy of credence. At the summary judgment stage, Plaintiff need not prove that Defendant's underlying motive was discriminatory. So long as the Plaintiff has presented evidence demonstrating that the Defendant's proffered non-discriminatory reason is unworthy of belief and upon which a jury could infer discriminatory motive, this claim should go to trial. Indeed, judgments about Lopez's intent and whether it was discriminatory or not are best left for trial and are within the province of the jury. *See Anderson,* 477 U.S. at 249 ("at the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial"); *Brown v. Parker-Hannifin Corp.,* 746 F.2d 1407, 1411 (10th Cir.1984) ("where different ultimate inferences may be drawn from the evidence presented by the parties, the case is not one for summary judgment.")

At trial, Plaintiff must prove to the trier of fact that the proffered reason is not

only pretextual, but that it is a pretext for discrimination.  But, he need not do so at the summary judgment stage.  **Randle v. City of Aurora** 69 F.3d 441, 453, fn. 18 (10th Cir. 1995) *("At trial,* the plaintiff must convince the jury not only that the reason proffered by the defendant was pretextual, but that the jury should infer that the defendant's pretext concealed a motive of discriminating against the plaintiff in violation of the civil rights laws . . . this last inference . . .must be established at trial, but [it]  is not required to be found by the judge at the summary judgment stage").  Therefore, summary judgment should be denied as to Plaintiff's national origin, disparate treatment claim based on his removal from his 204-B supervisory position.

### ii.      Denial of STO Position in favor of Cottrell, Dunlap, and Krynovich.

Next, Plaintiff claims he was denied STO positions because of his national origin.  To establish a *prima facie* case, Plaintiff must show by legally sufficient evidence that (1)  he is a member of a protected class (Hispanic); (2) that he applied for the STO position and was qualified for it; (3) that despite his qualifications he was rejected for the position; (4)  and that the persons who were given the promotion to STO positions were not members of Plaintiff's protected class. **See Branson v. Price River Coal Co.,** 853 F.2d 768, 770 (10th Cir.1988).

Plaintiff claims that he applied for vacant STO positions in April, 1999, and September, 1999, and he was rejected for the STO positions despite having both driving and supervisory experience.  He further alleges that Cottrell, Dunlap, and Krynovich, whom Defendant ultimately selected for the three STO vacancies, were Caucasian and less qualified.  Plaintiff has sufficiently established a prima facie case of

discrimination based on national origin with respect to the STO positions awarded to Cottrell and Dunlap. However, with respect to the position awarded to Krynovich, Plaintiff cannot establish a *prima facie* case of discrimination because he did not apply for that particular position.

Pursuant to the ***McDonnell Douglas*** burden-shifting analysis, Defendant must come forward with a legitimate, non-discriminatory reason Pickering's decision to hire Cottrell and Dunlap over Plaintiff. Pickering claims that he selected Cottrell based on a previous working relationship when she worked as a Manager Distribution Operations, an EAS-18 position. Also, Cottrell back-filled for Pickering as the Plant Manager at the Air Mail Center, an EAS-21 position. **(Mtn. Sum. Jud., Ex. D, Pickering Aff., p. 3).** Pickering claims he hired Dunlap based on his excellent interview and impressive computer skills, including the development of several computer tracking programs. Pickering claims that he did not select Plaintiff for either position because he had a terrible interview, was not prepared, and was unable to answer transportation-type questions. Pickering ranked Plaintiff fifth of the five employees he interviewed. **(Id., pp. 2 & 3).**

Defendant has sufficiently provided a legitimate, non-discriminatory reason for choosing Cottrell and Dunlap over Plaintiff. As the Supreme Court has noted, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." ***Colon-Sanchez v. Marsh,*** 733 F.2d 78, 81 (10th Cir. 1984) (quoting ***Texas Dep't of Community Affairs,*** 450 U.S. at 254).

14

Defendant's evidence sufficiently raises a genuine issue of material fact as to whether it discriminated against Plaintiff.  Defendant has meet its burden under ***McDonnell Douglas***.

Therefore, the burden shifts to Plaintiff to present evidence that Defendant's reasons are pretextual. ***Danville v. Reg'l Lab Corp.,*** 292 F.3d 1246, 1250 (10th Cir.2002).  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." ***Id.*** (quotation omitted).  Various items of evidence which may be relevant to such a showing of pretext, including: (1) the employer's prior treatment of the plaintiff, (2) the employer's general policy and practice with respect to minority employment, particularly statistics reflecting a general pattern and practice of discrimination, (3) disturbing procedural irregularities, and (4) the use of subjective criteria, especially when used to evaluate candidates that are not objectively equally qualified. ***Colon-Sanchez,*** 733 F.2d at 81. In making this determination, the court considers the evidence as a whole. ***Id.*** Ordinarily this test can be "satisfied by proof that the employer treated similarly situated employees more favorably." ***Hysten,*** 296 F.3d at 1181.

Plaintiff attempts to show pretext with respect to Cottrell, pointing to her lack of transportation experience.  Plaintiff notes that Pickering has stated that STOs need to know drivers' job functions and have a good knowledge of safety regulations.  **(Resp,**

15

**Ex. 3, Pickering Dep, 15:4-17).** Plaintiff further points to the vacancy announcement for the position, which Pickering agreed correctly sets forth the requirements of the STO. The requirements listed are as follows:

1.   Knowledge of dispatching and scheduling for vehicle fleet operations;
2.   Ability to supervise a workforce, employee and contractor, engaged in transporting mail;
3.   Ability to plan and adjust routes and schedules to ensure efficient and timely movement of mail, including adjustments to meet emergency needs;
4.   Ability to inspect vehicles for proper utilization and safety;
5.   Ability to investigate safety and traffic law incidents;
6.   Ability to resolve scheduling issues with customers and postal operations personnel; and
7.   Ability to monitor transportation operations, including arrival/departure data, vehicle utilization and availability, and maintenance schedules, and take action to optimize operations.   **(Resp., Ex. 7).**

Plaintiff insists that Defendant relied heavily on subjective criteria in hiring Cottrell and that he and Cottrell were not objectively equally qualified. Specifically, Plaintiff points to Cottrell's lack of transportation experience. Plaintiff concludes that he was more qualified than Cottrell, rather than similarly situated, because of his extensive transportation experience. However, Plaintiff's subjective belief that Cottrell was less qualified is insufficient to deem pretextual Defendant's reasons for hiring her. ***Stover v. Martinez,*** 382 F.3d 1064, 1073 (10th Cir. 2004) (subjective beliefs of hiring official, not employee, relevant). Indeed, Plaintiff and Cottrell could conceivable possess particularly strong credentials in different areas. Plaintiff and Cottrell need not have been *identically* qualified; rather, they must possess objective qualifications for the particular position. ***Colon-Sanchez,*** 733 F.2d at 82, fn. 1.

Plaintiff bolsters his pretext argument by claiming that Defendant relied heavily

16

on subjective criteria in selecting Cottrell. Defendant's proffered reasons for selecting Cottrell – Pickering's familiarity with her work and a good interview– do *not* reflect the objective qualifications required for the STO position.  Indeed, Defendant does not claim that Cottrell had any of requirements posted in the job vacancy.

With respect to Dunlap, Plaintiff points to Dunlap's lack of driving knowledge and suggests that Defendant did not adhere to its own policies to promote based on merit, relevant experience, training, knowledge, skills, and ability required for the posted position.  **(Resp., Ex. 28.)**   Rather, Plaintiff claims that Defendant hired Dunlap based on irrelevant  criteria (i.e., Dunlap's computer skills).  Plaintiff claims he was more qualified based on "his detailed knowledge of dispatching and routing procedures, the structuring of routes, assigning of routes to meet time frames for delivery and pickup of mail, and inspection in and assessment of any damage and mechanical problems with equipment."  (**Resp., ¶** 47).

Plaintiff insists that none of the proffered reasons for hiring Dunlap or Cottrell point to merit, experience, training, knowledge, skills or abilities required for the position.  Rather, the proffered reasons suggest that Defendant hired Dunlap and Cottrell based on subjective criteria (i.e., prior working relationship, good interview) or abilities not required of the position (i.e., Dunlap's computer skills).  Indeed, Plaintiff's evidence suggests that Defendant's proffered reasons for failing to promote him are unworthy of credence.  Therefore, summary judgment should be denied as to Plaintiff's national origin, disparate treatment claim based Defendant's failure to promote him to a STO position.

### iii.    Denial of STO Position in Favor of Silva and Carter.

Finally, Plaintiff claims he was denied STO positions awarded to Silva and Carter because Defendant manipulated the vacancy announcements so Plaintiff could not apply.  To establish a *prima facie* case, Plaintiff must show by legally sufficient evidence that (1)  he is a member of a protected class (Hispanic); (2) that he applied for the STO position and was qualified for it; (3) that despite his qualifications he was rejected for the position; (4)  and that the persons who were promoted to STO positions were not members of Plaintiff's protected class. ***See Branson v. Price River Coal Co.,*** 853 F.2d 768, 770 (10th Cir.1988).

With respect to the STO positions which Silva and Carter attained in June, 2002, Plaintiff cannot establish a prima facie case of disparate treatment.  Plaintiff did not apply for those positions.  Instead, he claims that the Defendant deliberately failed to post the job vacancy announcement for the STO positions in a conspicuous place so that Plaintiff could not apply.  As a result, Plaintiff never knew of the job openings and did not apply.

In response, Defendant claims that others found the announcement in attendance control and Room 291 in the administrative building.  **(Resp., Ex. 17, Lopez Dep.).** Indeed, six other individuals applied for the position in the vacancy announcement. Silva, the person ultimately selected for the position, testified that he was aware of the vacancy because he saw the vacancy announcement posted on the bulletin board. **(Mtn. Sum. Jug., Ex. Z, Silva Dep.)**  Defendant claims that the STO positions were posted on the bulletin board in the work area, visible to other employees.  Plaintiff has

18

presented no evidence suggesting that the posting was manipulated in any way to prevent the Plaintiff from learning of the vacancy.  Therefore, Plaintiff has failed to establish how his failure to learn of the position vacancy was deliberately caused by Defendant.  Therefore, Plaintiff is unable to establish his *prima facie* case with respect to this claim.

### iv.    Denial of Training Opportunities.

Plaintiff claims he was denied training opportunities based on his national origin. To establish his *prima facie* case, Plaintiff must show that he was qualified for the various training opportunities;  that he was denied such opportunities;  and that Caucasians were given training opportunities. ***See, e.g., Branson**,* 853 F.2d at  770 (requirements for *prima facie* showing).  Plaintiff claims that he requested PVS[3] training; that he was denied that training; and that "many 204-Bs had PVS training."  However, Plaintiff does not indicate whether those 204-Bs were Caucasian or otherwise qualified for the training.  Plaintiff then points to the "Motor Vehicle Services 204-B Transportation Supervisor Training" that Krynovich received.  But Plaintiff does not indicate whether he requested, and was qualified for and denied, that specific training opportunity.   Finally, Plaintiff claims that he requested and was denied "VITAL" training which is geared towards drivers.  Again, Plaintiff fails to indicate which other similarly situated employees were allowed to participate in the "VITAL training," when he was not. Plaintiff has failed to establish a *prima facie* case of discrimination with respect to training opportunities.

---

[3]  Plaintiff does not indicate for what "PVS" stands.

### v.   *Disparate Impact Claim.*

In his Response, Plaintiff mentions– for the first time– allegations of disparate

impact.  Plaintiff claims that Defendants have a policy to hire non-drivers for STO

positions, which creates a disparate impact on Hispanic drivers.  There is no evidence

that Plaintiff ever properly exhausted this allegation at the administrative stage.  The

Tenth Circuit has concluded that the actual filing of a charge, whether timely or not, is a

jurisdictional prerequisite. *Jones v. Runyon,* 91 F.3d 1398, 1400 n. 1 (10th Cir. 1996).

Accordingly, a district court may not maintain jurisdiction over a Title VII claim for which

a charge has not been filed. *Id.*  Therefore, these allegations should be dismissed

pursuant to **FED. R. CIV. P. 12(b)(1)**.

### B.   **Reverse Gender Discrimination.**

Plaintiff's second claim alleges reverse gender discrimination in violation of Title

VII.  Plaintiff claims that because of his gender he was subject to disparate treatment

and suffered from a "hostile work environment."   However, Plaintiff does not attempt to

assert a separate hostile work environment claim.  Both his Complaint and Response

support this court's conclusion that Plaintiff is asserting only a disparate treatment claim.

To establish a prima facie case for disparate treatment based on reverse gender

discrimination, Plaintiff must show background circumstances that support an inference

that the Postal Service is one of those unusual employers who discriminates against the

majority or a historically favored group.  *Archuleta v. Colorado,* 46 F. Supp. 2d 1100,

1103 (D. Colo. 1998).  Under the *McDonnell Douglas* framework, even if Plaintiff

cannot allege sufficient background circumstances suggesting that Defendant

discriminates against the majority, he may still avail himself of the **McDonnell Douglas**

presumption if he "presents direct evidence of discrimination, or indirect evidence

sufficient to support a reasonable probability, that but for the plaintiff's status, the

challenged employment decision would have favored the plaintiff." **Notari v. Denver**

**Water Dep't,** 971 F.2d 585, 590 (10th Cir. 1992). "It is not enough, under this alternative

formulation, for a plaintiff merely to allege that he was qualified and that someone with

different characteristics was the beneficiary of the challenged employment decision.

Instead, the plaintiff must allege and produce evidence to support a reasonable

inference that but for plaintiff's status the challenged decision would not have occurred."

**Archuleta,** 46 F. Supp. 2d at 1104 (citations omitted). "If the evidence is sufficient in

that regard, the court must permit the defendant to articulate a non-discriminatory

justification for its employment decision, and then the plaintiff must have the chance to

show that the articulated justification is pretextual." **Id.**

Plaintiff claims that he was discriminated on the basis of his sex when he was not

selected for two EAS-16 STO positions.  Defendant claims that Plaintiff has not

presented evidence that supports a prima facie case of reverse gender discrimination.

The court agrees.  First, Plaintiff has not presented evidence that shows Defendant was

one of those unusual employers who discriminates against the majority.  Indeed, a

woman (Cottrell) and a male (Dunlap) were selected for the EAS-16 STO positions. The

evidence shows the Defendant ultimately selected another male, rather than the

Plaintiff, for training opportunities.  The selecting official for the position was a male

(Pickering).  Plaintiff's only "evidence" is that Lopez allegedly discriminates against men.

21

Yet, Plaintiff presents no proof of Lopez's alleged discriminatory animus but merely suggests that she does not like drivers in general. And, it was Pickering, not Lopez, that hired Cottrell.

Plaintiff points to Pickering's deposition in which Pickering confirms that although Cottrell had no driving experience, she did provide the "new blood" that the plant manager wanted. **(Resp, Ex. 3, Pickering Dep. 30: 3-10, 43: 1-9, 49: 1-25, & 50: 1-13).** However, Plaintiff in no way attempts to equate this desire for "new blood" to precluding male hires.

Plaintiff has failed to present any evidence to demonstrate that, but for his status as a male, Plaintiff would have been selected for the EAS-16 STO position. Nor has Plaintiff presented evidence that similarly situated females were in any way treated differently than him based on their gender. Plaintiff has not met his initial burden under ***McDonnell Douglas*** of proving a prima facie case of reverse gender discrimination under Title VII. Therefore, Defendant is entitled to summary judgment on Plaintiff's Title VII claim for reverse discrimination.

### C.    Retaliation.

Plaintiff's third claim alleges retaliation in violation of Title VII, **42 U.S.C.** § **2000e-3(a)**. To establish a *prima facie* case of retaliation, Plaintiff must prove that: (1) he engaged in a protected activity, i.e., he opposed an unlawful discriminatory employment practice, or that he filed a charge of unlawful discrimination; (2) he was subjected to an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the

adverse employment action.  In order to establish the second prong of his prima facie

case, Plaintiff must show an adverse employment action that is "materially adverse to

the employee's job status . . . amount[ing] to a significant change in employment status,

such as firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits." *Meiners v.*

*University of Kansas,* 359 F.3d 1222, 1230 (10th Cir. 2004).

       If the Plaintiff can establish a prima facie case, the employer then must articulate

a legitimate, nondiscriminatory reason for the adverse action.  *Berry v. Stevinson*

*Chevrolet,* 74 F.3d 980, 986 (10th Cir. 1996).  If the Defendant does so, the Plaintiff

then must establish that the employer's reasons are merely a pretext for retaliation.  *Id.*

The burden of persuasion at all times remains on the Plaintiff.  *Sauers v. Salt Lake*

*County,* 1 F.3d 1122, 1128 (10th Cir. 1993).

       Further, Plaintiff must show that he exhausted administrative remedies for *each*

individual retaliatory act.  *Duncan v. Manager, Dep't of Safety, City & County of*

*Denver,* 397 F.3d 1300, 1314 (10th Cir. 2005).  *See also Annett v. Univ. of Kansas,*

371 F.3d 1233 (10th Cir. 2004) (rejecting exceptions to exhaustion rule for claims the

were like or reasonably related to allegations contained in EEO Complaint).   That is,

Plaintiff must file a separate EEOC charge detailing each alleged adverse employment

action taken against him.

       Plaintiff alleges that Defendant retaliated against him as follows: (1) by refusing

to promote him; (2) by prohibiting him from applying for STO positions; (3) by

substantially changing his work conditions; (4) by negatively impacting terms and

conditions of employment; (5) by issuing unwarranted discipline; (6) by taking measures to set him up for safety infractions; and (7) by subjecting him to a hostile work environment.  However, Defendant maintains that only claims (1) and (2) are properly before the court, as all other claims (3)-(7) have not been exhausted.  The court agrees with Defendant.

In his first EEO Complaint of Discrimination, filed October 11, 1999, Plaintiff claimed that the alleged act of discrimination took place on June 10, 1999.  He stated:

> "I feel that I was not given the same opportunities to improve my knowledge of the entire facility through training and educational seminars that were made available to Anglo candidates, specifically Mrs. Elise Cottrell, and Mr. James Dunlap."  **(Mtn. Sum. Jud., Ex. A).**

He did *not* check the retaliation claim box in the "type of discrimination" section of the Complaint.  Therefore, the incidents complained of in his first EEO Complaint do not form the basis of any of his retaliation claims.

In his second EEO Complaint of Discrimination, filed November 9, 2000, Plaintiff claimed that the alleged act of discrimination took place in February, 1998: "It has occurred since I originally applied to become certified 204-B."  He additionally checked the "retaliation" box in the "type of discrimination" section of the Complaint. He stated:

> "The fact that only Anglos are given the opportunity to obtain training detail and advancement into certified positions and Hispanics are denied those same opportunities.  I also feel that I have been denied additional opportunities and have been harassed due to the filing of a previous EEO Complaint."  **(Mtn. Sum. Jud., Ex. N)**

This EEO Complaint sufficiently demonstrates exhaustion as to Plaintiff's (1) claim of retaliation: that he was not promoted.

24

In his third and final EEO Complaint of Discrimination, filed November 2, 2002, Plaintiff claimed that the alleged act of discrimination took place in June, 2002: "Failure to post continuous harassment and retaliation May-Oct. 2002". He additionally checked the "retaliation" box in the "type of discrimination" section of the Complaint. He stated:

> "Ms. CC Lopez and Mr. Tom Martin deliberately failed to post the positions for Supervisor of Transportation Operations to insure that Mr. Mike Silva and Mr. Jeff Carter would be awarded such positions as reward for their participation and concealment of illegal actions and violations (retaliation, harassment) against me, and witnesses in pending EEOC Complaints. It also didn't allow other qualified personnel an opportunity." **(Mtn. Sum. Jud., Ex. S)**.

This EEO Complaint sufficiently demonstrates exhaustion as to Plaintiff's (2) claim of retaliation: that he was prohibited him from applying for STO positions.

Based on the foregoing, Plaintiff has only exhausted administrative remedies for the following retaliatory acts:

1.   Denial of training and advancement into certified positions (i.e., 204-B supervisory positions); and

2.   Denial of STO positions through Lopez and Martin's failure to post STO positions.

Allegations of retaliation (3)-(7) were not mentioned in Plaintiff's EEO Complaints of retaliation. Therefore, Plaintiff has failed to show that he exhausted administrative remedies as to the retaliation allegations (3)-(7). To the extent Plaintiff has failed to exhaust these claims, they are not properly before the court. *Duncan,* 397 F.3d at 1314; *Jones,* 91 F.3d at 1400 n. 1 (holding that a court does not have jurisdiction over a Title VII claim for which a charge has not been filed); *In re Smith,* 10 F.3d 723, 724 (10th Cir.1993) (filing a charge with the EEOC is a jurisdictional

prerequisite to filing a Title VII action in federal court). Because this court lacks jurisdiction over Plaintiff's retaliation claims (3)-(7), to the extent Plaintiff's third claim for relief is based on claims (3)-(7), it should be dismissed for lack of jurisdiction. Therefore, Plaintiff's retaliation claims (3)-(7) are dismissed pursuant to **FED. R. CIV. P. 12(b)(1).**  This order addresses Plaintiff's claims of retaliation (1) and (2), over which the court has jurisdiction.

### I.    *Discontinuation of 204-B Assignment/ Denial of STO Position.*

First, Plaintiff claims that he was not allowed to continue in his 204-B assignment  in retaliation for his October, 11, 1999, EEO Complaint.  **(Mtn. Sum. Jud., Exs. A & N).** Defendant argues that Plaintiff cannot establish his prima facie case because he cannot prove that he engaged in a protected activity at the time he was removed from the 204-B assignment.  Plaintiff was removed from the 204-B position and was returned to his craft position in June, 1999.  Therefore, Defendant notes that Plaintiff was removed from his 204-B position ***before*** the filing of his first EEO Complaint, dated October 11, 1999.  Lopez's decision to take Plaintiff out of his 204-B position could not have been done in retaliation for his first EEO Complaint, which was filed after the removal.  Plaintiff has not established a prima facie case that his removal from his 204-B position was done in retaliation for his October 11, 1999, EEO Complaint.          Further, at a minimum, Plaintiff must show that the individual who took adverse action against the Plaintiff knew of the protected activity in order to meet his ultimate burden of persuasion, which remains, at all times, with the Plaintiff. ***Williams v. Rice,*** 983 F.2d 177, 181 (10th Cir. 1993); ***Love v. Re/Max of Am., Inc.,***

738 F.2d 383, 385 (10th Cir. 1984) (Plaintiff who participates in a Title VII proceeding need not show that the underlying charge of discrimination is meritorious).  Plaintiff has presented no evidence that Lopez, who removed Plaintiff from the 204-B position, even knew of any alleged protected activity by Plaintiff.   Plaintiff presents the Affidavit of Fred Morin who claims that Lopez told him that she did not want any more drivers – which Plaintiff was at the time– to become STOs.  **(Resp., Ex. 6, Morin Aff.).**   This evidence demonstrates that if Lopez was "retaliating," it was against all drivers, not just Plaintiff.

Next, Plaintiff presents affidavit testimony that Lopez had a reputation for retaliating against drivers who have filed EEO actions and initiates retaliation through her STOs.  **(Resp., Ex. 16, Genereux  Aff. at ¶ 3).**  Yet, again, Plaintiff provides no evidence suggesting that Lopez was aware of *his* impending October, 1999, EEO Complaint at the time she made her decision to remove him from his 204-B position in June, 1999.

Finally, Plaintiff points to Lopez's affidavit in which she states that once an employee files an EEO action, news of the complaint travels fast and managers often find out about the complaint before an investigator contacts them.  **(Resp., Lopez Dep., 35:13-18, Griffith Aff. At ¶ 14.).**  However, this falls short of demonstrating that Lopez had knowledge of any EEO Complaint when she decided to remove Plaintiff from his 204-B assignment.  Instead, she states in her deposition that she removed Plaintiff from his 204-B assignment because she did not want Plaintiff to lose his bid position, which would result in him becoming an unsigned regular.

Plaintiff has failed to present any evidence suggesting that Lopez removed Plaintiff from his 204-B position in retaliation for his October, 1999, EEO Complaint. Therefore Plaintiff cannot establish the second element of his *prima facie* case. Therefore, Defendants Motion for Summary Judgment should be granted with respect to Plaintiff's retaliation claim based on his removal from his 204-B assignment.

### ii.    Denial of Opportunity to Apply for STO Position.

Plaintiff's second claim of retaliation alleges that he was denied the opportunity to apply for a STO position because it was not placed in a conspicuous position. Plaintiff cannot establish his *prima facie* case of retaliation because he cannot show that he suffered an adverse employment action.  He claims that the vacancy postings were manipulated so that he could not apply.  Yet, six other individuals applied for the position in the vacancy announcement.  Silva, the person ultimately selected for the position, testified that he was aware of the vacancy because he saw the vacancy announcement posted on the bulletin board in the crow's nest.  There is no evidence that the position vacancy posting was manipulated in any way to prevent the Plaintiff or any other individual who had filed an EEO Complaint from learning of the vacancy. Plaintiff cannot establish there was a causal connection between his prior EEO activity and his failure to learn of the position vacancy.  Thus, Defendant is entitled to summary judgment on Plaintiff's second claim of retaliation.

Accordingly,

**IT IS ORDERED as follows:**

1.     That Defendant's Motion for Summary Judgment [#31], filed January 18, 2006, **IS GRANTED in part** as to Plaintiff's first claim for relief (national origin discrimination) with respect to STO positions awarded to Silva,

Carter, and Krynovich and various training opportunities; Plaintiff's second claim for relief (reverse gender discrimination); and Plaintiff's third claim for relief (retaliation claims (1) & (2));

2.    That Plaintiff's third claim for relief based on retaliation claims (3)-(7) and any disparate impact claim are dismissed *sua sponte* pursuant to **FED. R. CIV. P. 12(b)(1)** for lack of jurisdiction for failure to exhaust;

3.    That Defendant's Motion for Summary Judgment [#31], filed January 18, 2006, **IS DENIED in part** as to Plaintiff's first claim (national origin discrimination) based on Plaintiff's removal from his 204-B supervisory position and Defendant's failure to promote Plaintiff to STO positions ultimately awarded to Cottrell and Dunlap;

3.    That the **Final Pre-Trial Conference REMAINS SET for May 26, 2006, at 10:00 a.m.;**

4.    That the **Trial Preparation Conference REMAINS SET for July 24, 2006, at 8:30 a.m.**; and

5.    That the **Jury Trial REMAINS SET to commence on August 21, 2006, at 9:00 a.m.**

**DATED** at Denver, Colorado, this 3rd day of May, 2006.

BY THE COURT:

*s/Craig B. Shaffer*
_____          Craig B. Shaffer
United States Magistrate Judge